UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NANCY PRENTICE, et al.,

        Plaintiffs,

    v.

NATIONAL RAILROAD PASSENGER
CORPORATION, et al.,

        Defendants.

Case No. 12-cv-05856-MEJ

**ORDER RE: MOTION FOR SUMMARY
JUDGMENT**

Re: Dkt. No. 51

**INTRODUCTION**

      Pending before the Court is Defendant National Railroad Passenger Corporation's

("Amtrak") Motion for Partial Summary Judgment as to the Second Cause of Action for Gross

Negligence and accompanying prayer for Punitive Damages.  Having considered the parties'

papers, relevant legal authority, and the record in this case, the Court GRANTS Amtrak's Motion

for the reasons set forth below.

**BACKGROUND**

**A.**    **Factual Background**

      On October 12, 2011, Amtrak Certified Engineer Timothy Levake failed to stop Amtrak

Train No. 717 at a stop indication (red signal) and collided with the lead locomotive of Train No.

14, which was unloading passengers at the Oakland Amtrak Station.  Def.'s Stmt. Undisputed

Mat. Facts ("Def. Stmt.") No. 1, Dkt. No. 60.  Plaintiffs Nancy Prentice and Colin Haughin

("Plaintiffs") suffered injuries as a result of the collision.  Sec. Am. Compl. ("SAC") ¶ 27.

      After the collision, in accordance with Amtrak policy and federal regulations contained in

49 C.F.R. § 240.307, Amtrak removed Levake from service and suspended his locomotive

engineer certification pending a formal investigation into charges that he failed to comply with several rules and requirements in connection with the accident. Def. Stmt. No. 2. On November 16, 2011, after a formal investigation, Amtrak revoked Levake's engineer certification and terminated his employment. *Id.* Amtrak admitted negligence with respect to the accident, but denied that it was grossly negligent in certifying and retaining Levake as an engineer. Answer ¶¶ 18-25, Dkt. No. 40.

       1.     Levake's Training and Certification

Levake began his employment with Amtrak in August of 2003 as a conductor trainee and was promoted to conductor in 2004 after successful completion of his training program. Def. Stmt. No. 3. Levake entered the locomotive engineer training program in April of 2005. *Id.* After fulfilling all of the program's requirements, Levake was promoted and certified as a train service locomotive engineer on August 17, 2006. *Id.*

At the time of Levake's employment, Amtrak had a written program for the certification and recertification of locomotive engineers that conformed with the criteria set forth in 49 C.F.R. § 240, and was deemed approved by the Federal Railroad Administration ("FRA"). *Id.*, No. 4. Amtrak's engineer certification program included classroom training and testing, on the job training, performance testing, field efficiency tests by supervisors to monitor engineers for ongoing rules compliance, and provisions for specific sanctions in the event of certain rules infractions, among others. *Id.*, No. 5.

Levake's entire training from April 2005 until he was promoted and received his engineer certification in August 2006, including the training, evaluation, monitoring, testing, supervision, and discipline, was in compliance with Amtrak's FRA-approved policy and program which contained the criteria set forth in 49 C.F.R. § 240. *Id.*, No. 6. When Levake received his engineer certificate, he was fully qualified to be a locomotive engineer under Amtrak's own program and polices, which contain all of the requirements of 49 C.F.R. § 240. *Id.*, No. 7.

It is customary and expected for Amtrak student engineers to receive criticism and commentary during the training program, as it is during this time that they acquire the knowledge and skills necessary for promotion and certification. *Id.*, No. 8. For this reason, Amtrak's training

program considers the progress student engineers make over the course of their training when determining whether a student engineer is qualified for promotion.  *Id.*  Throughout the training process, supervisors track the student engineer's progress, evaluations, and test results.  *Id.*  Amtrak will not promote or certify a student engineer until the student demonstrates through evaluations, tests, and reports that he or she has made consistent progress, and is scoring highly.  *Id.*, No. 9.  Amtrak will not promote and certify a student engineer until the student engineer's supervisors and the Amtrak System General Road Foreman's Office in Wilmington, Delaware have reviewed the student's progress and approved the promotion and certification.  *Id.*

Amtrak maintains operating rules and has implemented programs to ensure that its employees are instructed and tested periodically on the operating rules in accordance with 49 C.F.R. § 217.[1]  Amtrak's program includes training, instruction, operational testing, and inspections to ensure compliance with its code of operating rules, timetables, and timetable special instructions.  *Id.*, No. 14.  Supervisors are specifically instructed on how to conduct tests, inspections, and instruct engineers on compliance with the operating rules, in compliance with 49 C.F.R. § 217.  *Id.*

Over the course of Levake's 16-month student engineer training, he received numerous student engineer evaluations, tests and Efficiency T.E.S.T.S. reports, which improved over the course of his training.  *Id.*, No. 10.  When Levake was certified in August 2006 after completing the training program, he demonstrated that he was fully qualified for promotion to certified locomotive engineer.  *Id.*, No. 11.  Levake successfully passed all required examinations and demonstrated his proficiency in applied skills performance tests to safely perform all required duties of a certified locomotive engineer.  *Id.*  Once certified, Levake received all of the continuing or recurring training for recertification required by Amtrak's program and policy.  *Id.* No. 12.  This included classroom training and testing, on-the-job training, performance testing, and regular field efficiency test by supervisors to monitor for ongoing rules compliance while Levake operated trains.  *Id.*

---

[1] This section sets forth time applicable time limitations for making locomotive engineer certification or recertification determinations.

United States District Court
Northern District of California

### 2.   The 2006 Failure to Stop Incident and Recertification

In November of 2006, five years prior to this incident, Levake failed to stop his train before passing a stop indication on the BNSF Railway.  *Id.*, No. 13.  For that incident, Amtrak suspended Levake for 30 days, revoked his engineer's certificate in accordance with 49 C.F.R. § 240.117(g)(3)(i)[2], and assigned Levake a minimum of five days of remedial training.  *Id.*

### 3.   Disputed Facts

Subject to dispute are a number of additional facts Plaintiffs submit based on the declaration of railroad expert Colon Fulk.  Pls.' Add'l Fact. Stmt., Dkt. No. 61.  According to Fulk, Amtrak knew Levake was not qualified to operate as an engineer.  *Id.*, No. 1, 6.  Levake should not have been promoted and certified based upon his performance in the engineer training program.  *Id.*, No. 2.  It is not the custom and practice of the industry for a student engineer to receive the type of negative evaluations given to Engineer Levake.  *Id.*, No. 3.  Amtrak personnel improperly evaluated Levake's qualifications to actually run a locomotive, as evidenced by the incident in which Levake ran a stop indication in November 2006.  *Id.*, No. 4.  When taking into account Amtrak's safety obligation under the General Code of Operating Rules ("GCOR"), coupled with Levake's poor performance review, he should have been relieved of his duties as an engineer after the November 2006 stop indication incident.  *Id.*, No. 5.  Amtrak's failure to take

---

[2] 49 C.F.R. § 240.117(g)(3)(i)  provides:

> (g) A period of ineligibility described in this paragraph shall:
>
> (1) Begin, for a person not currently certified, on the date of the railroad's written determination that the most recent incident has occurred; or
>
> (2) Begin, for a person currently certified, on the date of the railroad's notification to the person that recertification has been denied or certification has been revoked; and
>
> (3) Be determined according to the following standards:
>
> > (i) In the case of a single incident involving violation of one or more of the operating rules or practices described in paragraphs (e)(1) through (e)(5) of this section, the person shall have his or her certificate revoked for a period of one month.

pro-active measures after the negative evaluations and the stop signal incident in November 2006, namely the constant monitoring of Levake to ensure rule compliance, resulted in Amtrak's resorting to re-active measures after the incident causing injury to 17 people. *Id.*, No. 7. Amtrak's handling of Levake's poor knowledge and skill performance was not the custom and practice normally used in the rail industry. *Id.*, No. 8. Moreover, Amtrak did not place safety as their most important element in performing its duties, and were knowingly careless of the safety of others. *Id.*, No. 14, 16.

    4.   <u>Blue Signal</u>

Plaintiffs allege that Amtrak violated federal safety rules by failing to display blue signals, which must be displayed when workers are on, under, or between a train. SAC ¶ 21 (citing 49 C.F.R. § 218.5). However, at the time of the October 12, 2011 accident, there were no workmen on, under, or between rolling equipment which would require the Railroad to display a blue signal or blue flag in accordance with the applicable federal regulations.[3] Def. Stmt. No. 15.

**B.   Procedural Background**

Plaintiffs initiated this action on November 15, 2012 by filing a Complaint against Amtrak, alleging one cause of action for negligence. Dkt. No. 1. On December 13, 2012, Amtrak filed an Answer, in which it admits negligence. Dkt. No. 4. On May 28, 2013, Plaintiffs filed a First Amended Complaint asserting a new cause of action for gross negligence against Amtrak and adding Union Pacific Rail Road as a defendant. Dkt. No. 20. Amtrak filed a Motion to Dismiss, asserting that Plaintiffs' gross negligence claims were preempted by federal law. Dkt. No. 25. However, Plaintiffs subsequently filed their SAC on July 17, 2013, alleging gross negligence in addition to the original negligence claim, and including a prayer for punitive damages. Dkt. No.

---

[3] Plaintiffs did not object to Amtrak's evidence in their Opposition, but filed untimely objections three days before the hearing date. Plaintiffs objected to paragraph 5 of the Declaration of Tommy Andrews, in which he states that workers were not present at the time of the collision, based on lack of personal knowledge. Pls.' Evid. Obj. at 5. Even if not stricken, Plaintiffs' objection the Court would have overruled this objection because Andrews was the charging officer and was present at the formal hearing regarding the accident. Andrews Decl. ¶ 4. As such, he would have personal knowledge of the pertinent facts regarding the accident, including whether workers were present at the time of the collision. Accordingly, Amtrak sufficiently established that Andrews had personal knowledge of the facts surrounding the incident. The Court will thus treat this fact as undisputed for purposes of this summary judgment motion.

United States District Court
Northern District of California

1   31.  On August 8, 2013, Amtrak filed an Answer to the SAC, in which it again admitted

2   negligence but denied gross negligence.  Dkt. No. 40.

3        On June 6, 2014, Amtrak filed the present Motion for Partial Summary Judgment on the

4   gross negligence claim.  Dkt. No. 51.  In its Motion, Amtrak argues that Plaintiffs' claims are

5   preempted by federal law, and that the undisputed evidence establishes that Amtrak complied with

6   all federal regulations regarding training, evaluating, monitoring, testing, discipline, and

7   certification of Engineer Levake.  Mot. at 7.

8        Plaintiffs filed an Opposition on June 26, 2014 (Dkt. No. 59), to which Amtrak filed a

9   Reply on July 3, 2014 (Dkt. No. 64).  On July 23, 2014, the Court found this matter suitable for

10   disposition without oral argument and vacated the July 24 hearing.  Dkt. No. 70.

                                    **LEGAL STANDARD**

12        Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

13   that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

14   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

15   bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

16   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

17   317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

18   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

19   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

20        Where the moving party will have the burden of proof on an issue at trial, it must

21   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

22   party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

23   the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

24   pointing out to the district court that there is an absence of evidence to support the nonmoving

25   party's case.  *Celotex*, 477 U.S. at 324-25.

26        If the moving party meets its initial burden, the opposing party must then set forth specific

27   facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

28   P. 56(e); *Anderson*, 477 U.S. at 250.  It is not the task of the Court to scour the record in search of

United States District Court
Northern District of California

a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

### A.   Amtrak's Evidentiary Objections

Amtrak moves to strike the declaration of Plaintiffs' expert witness, Colon Fulk, filed in support of Plaintiffs' Opposition to the Motion for Summary Judgment, because it is conclusory, speculative, unreliable, and improper pursuant to Federal Rules of Evidence 702. Reply, at 13-14. However, the Court need not rule on this objection because, as discussed below, it concludes that Mr. Fulk's opinion, even if admissible, does not provide sufficient evidence to support Plaintiffs' gross negligence claims.

### B.   Plaintiffs' Evidentiary Objections

On July 21, 2014, less than three days prior to the hearing date on the motion for summary judgment, Plaintiffs filed comprehensive objections to Amtrak's expert declarations. Pls.' Evid. Obj., Dkt. No. 68. Amtrak moves to strike these objections on the grounds that they fail to comply with Local Rule 7-3(a), which requires that "any evidentiary and procedural objections to the motion must be contained within the brief or memorandum," and "must be filed and served not more than 14 days after the motion was filed." Mot. to Strike ("MTS") at 1, Dkt. No. 26. Amtrak also argues that the late-filed objections are prejudicial, as Amtrak was not given the opportunity to respond in its reply brief. *Id.* at 2. Plaintiffs did not file a reply to the MTS.

Under Local Rule 7-3(a), the last day to serve objections to Amtrak's evidence was June 26, 2014, when Plaintiffs' Opposition was due. Instead of timely raising these objections within

1    their Opposition to Amtrak's motion, Plaintiffs waited until less than three days before the hearing

2    to submit separate objections, depriving Amtrak of the opportunity to respond in its reply brief.

3    Because Plaintiffs filed the objections at issue apart from their opposition brief in violation of

4    Civil Local Rule 7-3, and because the objections were untimely, the Court GRANTS Amtrak's

5    MTS.  *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1119 (N.D. Cal.

6    2011).

7    **C.    Whether Plaintiffs' Claims Regarding Training, Testing,  Monitoring, Discipline and
8         Certification of Engineer Levake are Preempted By the Federal Railroad Safety Act
         ("FRSA")**[4]

9         1.    FRSA Preemption

10        As a threshold matter, the parties disagree as to whether Plaintiffs' claims are preempted

11   by FRSA.  Congress enacted FRSA in 1970 "to promote safety in every area of railroad operations

12   and reduce railroad related accidents and incidents."  49 U.S.C. § 20101.  It grants the Secretary of

13   Transportation the authority to "prescribe regulations and issue orders for every area of railroad

14   safety."  49 U.S.C. § 20103(a); *see Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000).

15   FRSA also contains an express preemption clause, which provides: "Laws, regulations, and orders

16   related to railroad safety and laws, regulations, and orders related to railroad security shall be

17   nationally uniform to the extent practicable."  49 U.S.C. § 20106(a)(1).  States are, however,

18   permitted to adopt or continue in force laws that are "not incompatible" with federal laws and

19   regulations.  49 U.S.C. § 20106(a)(2)(B).

20        For purposes of the express preemption clause in 49 U.S.C. § 20106(a)(2), a state

21   regulation "cover[s] the same subject matter" as an FRA regulation "if it addresses the same safety

22   concern as the FRA regulation."  *Burlington N. RY. Co. v. State of Mont.*, 880 F.2d 1104, 1105 (9th

23   Cir. 1989).  In order to "prevail on the claim that the regulations have preemptive effect, [the

24   movant] must establish more than that they 'touch upon' or 'relate to' that subject matter."  *CSX

25   Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).  "Preemption will lie only if the federal

26   regulations substantially subsume the subject matter of the relevant state law."  *Id.*; *accord

27

28   _____
     [4] FRSA is codified at 49 U.S.C. §§ 20101 *et seq.*

United States District Court
Northern District of California

1    *Shanklin*, 529 U.S. 344, 352 (2000).

2        Under 49 U.S.C. § 20106(a), FRA regulations have preemptive effect not only on state and

3    local statutes and regulations, but also on state common law tort claims.  *Easterwood*, 507 U.S. at

4    570-71 (applicable federal regulations displaced state tort law under which plaintiffs sought to

5    impose an independent duty on the railroad); *see also Shanklin*, 529 U.S. at 357 (instructing that

6    *Easterwood* clearly stated that FRA regulations preempted state tort law).  Section 20106 was

7    amended in 2002 to clarify its impact on state law causes of action.  The amendment clarified

8    Congressional intent to allow state law claims "based on a railroad's failure to comply with federal

9    regulations or its own regulations."  *S. Cal. Reg'l Rail Auth. v. Sup. Ct. ("SCRRA")*, 163 Cal. App.

10   4th 712, 735-38 (2008); *see also Grade v. BNSF Ry. Co.*, 676 F.3d 60, 65-86 (8th Cir. 2012)

11   (construing the 2007 amendment).

12       Amtrak argues that Plaintiffs' gross negligence claims are precluded by FRSA because

13   they are subsumed by federal regulations governing training, education, instruction, discipline,

14   supervision, and qualification, (49 C.F.R. § 240 *et seq.*), and railroad operating rules (49 C.F.R. §

15   217 *et seq.*).  Mot. at 12-13.  Particularly, the Secretary promulgated Part 240 of the Code of

16   Federal Regulations "to ensure that only qualified persons operate a locomotive or train."  49

17   C.F.R. § 240.1(a).  Part 240 specifies "standards for the eligibility, training, testing, certification

18   and monitoring of all locomotive engineers."  *Id.* § 240.1(b).  The regulations also detail how a

19   railroad company must obtain FRA approval of its engineer certification program, the criteria and

20   methodology to be used in selecting supervisors for persons seeking certification, and for

21   continuing education, testing, training, and monitoring of performance.  *Id.* §§ 240.1-240.411.

22       The Secretary also promulgated Part 217, requiring railroads to file their operating rules,

23   timetables, and timetable special instructions and to periodically instruct its employees on the

24   meaning and application of the operating rules.  *Id.* §§ 217.7, 217.11.  Part 217 also requires

25   railroads to periodically conduct operational tests and inspections, in accordance with the written

26   program, to determine the extent of employees' compliance with its operating rules, timetables,

27   and timetable special instructions.  *Id.* § 217.9.

28       Amtrak also argues that Plaintiffs' gross negligence claims are preempted because they

United States District Court
Northern District of California

9

1   cannot demonstrate that Amtrak violated any of the applicable federal regulations or any of

2   Amtrak's own operating rules that were created pursuant to an FRA regulation.  Mot. at 13.  In

3   response, Plaintiffs argue that they have sufficiently alleged that Amtrak violated federal standards

4   of care with respect to training, discipline, and certification of its locomotive engineer, as set forth

5   in 49 C.F.R. § 240 *et seq.*, and are thus not preempted under 49 U.S.C. § 20106(b)(1)(A).  As

6   discussed below, the Court finds that Plaintiffs have alleged gross negligence claims premised on

7   violation of applicable federal standards of care.  However, because Plaintiffs cannot establish

8   violations of these standards on summary judgment, any remaining claims based on a state law

9   standard of care regarding negligent hiring, supervision, discipline or retention of Amtrak's

10  engineer are preempted.

2.   Plaintiffs' Gross Negligence Claims Regarding Training, Testing,  Monitoring, Discipline and Certification of Engineer Levake are Preempted by Federal Regulations

13  Amtrak argues that Plaintiffs cannot establish that Amtrak actually violated an applicable

14  federal statute with respect to training, evaluating, or monitoring Engineer Levake.  Mot. at 14.

15  Amtrak contends that Plaintiffs' failure to establish any violation of a federal standard of care is

16  fatal to their gross negligence claim because their claim would rest solely on a state law duty of

17  care, which is preempted by FRSA.  *Id.* at 16-17.  In response, Plaintiffs contend that these claims

18  survive summary judgment because there is a triable issue of fact as to whether Amtrak violated

19  the applicable federal standard of care with respect to its initial training and certification of

20  Engineer Levake.  Opp'n at 10.

21  Plaintiffs first argue that Amtrak "willfully violated" FRA regulations regarding

22  locomotive engineer qualifications and certification, as well as its own operating rules regarding

23  passenger safety.  SAC ¶ 41.  Specifically, Plaintiffs allege that Amtrak failed to properly "test,

24  evaluate, inspect, certify and monitor" Engineer Levake in violation of 49 C.F.R. § 240.1 *et seq.*,

25  which requires "railroads to implement and follow testing, evaluating and monitoring programs

26  for producing locomotive engineers who have the knowledge, skill and ability to safely operate

27  trains."  SAC ¶¶ 11, 19-20, 22-25.

28  The FRA provides extensive requirements for the training and certification of railroad

United States District Court
Northern District of California

10

1    engineers.  *See* 49 C.F.R §§ 240.101-240.411.  All locomotive engineers must receive certification

2    prior to operating a locomotive.  *Id.* § 240.1.  A railroad must submit to the FRA for approval a

3    written certification program and a description of how the railroad's program conforms to all of

4    the specific requirements contained in this Part.  *See* 49 C.F.R. § 240.103; *see also* Andrews Decl.

5    ¶ 6-7, Dkt. No. 53; Heikkila Decl. ¶ 17, Dkt. No. 54.  The requirements of Part 240 pertain both to

6    the process for certification of new-hire engineers and recertification for existing engineers who

7    must be recertified every 36 months.  Andrews Decl. ¶ 6.

8         The railroad's program must include general criteria for the eligibility of an individual as a

9    locomotive engineer.  49 C.F.R. § 240.109.  Prior to "initially certifying or recertifying any person

10   as an engineer for any class of train or locomotive service," the railroad must "determine that the

11   person has demonstrated, in accordance with the requirements of section 240.127 of this part, the

12   skills to safely operate locomotives or locomotives and trains, including the proper application of

13   the railroad's rules and practices for the safe operation of locomotives or trains, in the most

14   demanding class or type of service that the person will be permitted to perform."  49 C.F.R. §

15   240.211(a ).

16        "A railroad shall have procedures for testing a person being evaluated for qualification as a

17   locomotive engineer in either train or locomotive service to determine that the person has

18   sufficient knowledge of the railroad's rules and practices for the safe operation of trains."  49

19   C.F.R. § 240.125.  The testing methods selected by the railroad must be, among other criteria:

20   "designed to examine a person's knowledge of the railroad's rules and practices for the safe

21   operation of trains;" "objective in nature;" and "sufficient to accurately measure the person's

22   knowledge of the covered subjects."  49 C.F.R § 240.125(c)(1), (2), and (5).  "A railroad shall

23   have written documentation showing the person … [e]xhibited his or her knowledge by achieving

24   a passing grade in testing that complies with this part.  *Id*. § 240.211(b)(i).

25        The FRA also mandates that a railroad "shall have procedures for monitoring the

26   operational performance of those it has determined as qualified as a locomotive engineer in either

27   train or locomotive service."  49 C.F.R. § 240.129(a).  To retain certification, each locomotive

28   engineer must receive at least one operational monitoring observation and one unannounced

United States District Court
Northern District of California

1    compliance test each calendar year.  *Id.* § 240.303(b)-(c).  In addition to mandatory annual

2    reviews, locomotive engineers must also be recertified every three years in order to continue

3    operating locomotives.  *Id.* § 240.201(c).  If a locomotive engineer fails to achieve a passing score

4    under the FRA's testing and evaluation procedures, the railroad is prohibited from permitting or

5    requiring such a locomotive engineer from operating a locomotive unless and until the locomotive

6    engineer receives a passing score.  *Id.* § 240.211(c).  Last, Part 240 has a specific provision

7    confirming the preemptive effect of the Part 240 regulations under FRSA § 20106.  *Id.* § 240.5.

8         Here, Plaintiffs are unable to establish that Amtrak violated any of these rules with regard

9    to its training and certification of Engineer Levake.  In arguing that Amtrak flagrantly violated

10   federal standards with respect to training and certification of Engineer Levake, Plaintiffs rely

11   exclusively on two facts: (1) a small number of negative reviews Levake received as a trainee

12   regarding his lack of knowledge of operational rules[5]; and (2) Levake's prior failure to comply

13   with a stop signal in 2006.  Fulk Decl. ¶¶ 11-13, Dkt. No. 62.  Based on these facts, Fulk opines

14   that Amtrak violated 49 C.F.R. § 240.213 by failing to determine whether Engineer Levake had

15   the requisite knowledge and skills to safely operate a locomotive.  *Id.*, ¶¶ 19, 20.

16        Because the FRA provides specific, objective criteria for determining whether a person has

17   the required skills and knowledge to become an engineer, to prove a violation of this part,

18   Plaintiffs must provide facts establishing that Amtrak failed to certify Levake in accordance with

19   the FRA mandated program.  49 C.F.R. § 240.115(c)(1)-(6).  It is undisputed that the FRA

20   provides specific criteria for evaluating the adequacy of a railroad's engineer training program,

21   and that Amtrak's program complied with the FRA regulations.  Andrews Decl. ¶ 8; Heikkila

22   Decl. ¶¶18-19.  Levake was certified in accordance with this program.[6]  Def. Stmt. No. 6.

23

24   [5] Engineer Levake received numerous reviews during his training period.  Andrews Decl. ¶ 10.
     Plaintiffs' expert does not identify any negative reviews in the last four months of Levake's
25   training program, or discuss what Levake's file revealed about his overall progress or
     qualifications at the conclusion of the training program.  Considering the very specific standards
26   for promotion and certification of engineers, it is not clear why Plaintiffs' expert failed to discuss
     Levake's performance in the final months of the engineer training program or explain the
27   conclusion that Levake remained unqualified to be an engineer even if he successfully passed the
     federally regulated certification test.
28
     [6] *See* Pls.' Resp. to Def. Stmt. No. 6, Dkt. No. 60: Plaintiffs agree that the training was provided

1    Accordingly, the fact that Levake received several negative reviews as a trainee is insufficient to

2    establish that Amtrak failed to comply with the FRA regulations in initially certifying Levake.

3           Based on the regulations set forth in 49 C.F.R. § 240.1, et seq., state law claims of

4    inadequate certification or training of locomotive engineers are preempted unless they are based

5    on violation of the federal standards set forth in these regulations.  Indeed, 49 C.F.R. § 240.5

6    expressly states that, under 49 U.S.C. § 20106, FRA regulations governing locomotive train

7    engineer certification and qualifications shall have preemptive effect.  Thus, absent evidence that

8    Amtrak violated a federal standard of care with respect to certifying Engineer Levake, Plaintiffs'

9    claim is based only on a state law duty of care, which is preempted.  *See Union Pacific R.R. Co. v.*

10   *Cal. Pub. Util. Comm'n*, 346 F.3d 851, 868 (9th Cir. 2003) ("[i]t is clear that the federal training

11   regulations [of 49 C.F.R. §§ 217.1, et seq., and 240.1, et seq.] do 'substantially  subsume' the

12   subject of employee training.")  Numerous cases have followed this same rationale and held that

13   state common law duty of care claims of negligent employee training, supervision, or discipline

14   are preempted by federal law.  *Burlington N. and Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 796

15   (7th Cir 1999) (invalidated Wisconsin statute on the basis that the training of railroad employees

16   was covered by federal regulations); *Peters v. Union Pacific R. Co.*, 80 F.3d 257, 263 (8th Cir.

17   1996) (plaintiffs' common law claim regarding engineer certification preempted by federal

18   regulations); *Olberding v. Union Pacific R.R. Co.*, 454 F. Supp. 2d 884, 887 (W.D. Mo. 2006)

19   (negligence claims premised on railroad employee safety training completely preempted by

20   FRSA); *Mehl v. Canadian Pacific Ry., Ltd.*, 417 F. Supp. 2d 1104, 117 (D.N.D. 2006) ("The

21   FRSA covers the area of training" [and] the Court expressly finds that the Plaintiffs negligent

22   training claims are preempted by federal regulations and that such claims must be dismissed.");

23   *Gillenwater v. Burlington  N. and Santa Fe Ry. Co.*, 2006 WL 1699362, at *1 (E.D. Mo. June 13,

24   2006) (finding "no indication the FRA meant to leave open a state law cause of action" with

25   

26   under the Amtrak program, but dispute that Levake's certification was in compliance with the
     Amtrak program based on his performance in the engineer training program, which is alleged to

27   have "fluctuated throughout his training." Fulk Decl. ¶ 20.  However, the Court notes that
     Plaintiffs do not consider any other aspect of Levake's certification, including objective testing

28   and skill testing in coming to this conclusion despite the fact that the federal rules require a
     showing of the requisite skills and knowledge prior to certification.

1   regard to railroad employee training).  Thus, the only state law claim that a plaintiff may pursue on

2   these subjects must demonstrate that the railroad violated the federal standards set forth in the

3   FRA regulations.  *See* 49 U.S.C. § 20106(b)(1)(A) and (B); *see also Nunez v. BNSF Ry. Co.*, 936

4   F. Supp. 2d 969, 976-77 (C.D. Ill. 2012),  *aff'd* 730 F.3d at 682;  *Murrell v. Union Pac. R.R. Co.*,

5   544 F. Supp. 2d 1138, 1147-48 (D. Or., 2008); *SCRRA*, 163 Cal. App .4th at 735-38.

6        Here, Amtrak's training, evaluation, monitoring, testing, and certifying of Engineer Levake

7   complied with Amtrak's FRA-approved policies and procedures.  Amtrak's written program for

8   the certification and recertification of locomotive engineers was submitted  to and approved  by

9   the FRA.  Andrews Decl. ¶ 7.  This program  includes all required elements contained in 49 C.F.R.

10  § 240, including classroom training  and testing, on the job training, performance testing, field

11  efficiency tests by supervisors to monitor engineers for ongoing rules compliance, and provisions

12  for specific sanctions in the event of certain rules infractions, among others.  *Id.*, ¶¶ 6-7; *see also*

13  Heikkila Decl. ¶ 17.

14       When Engineer Levake received his engineer certification in August 2006, he was fully

15  qualified  to be a locomotive engineer under Amtrak's own program and polices, which contain

16  all the requirements of 49 C.F.R. § 240.  Andrews Decl. ¶ 8; *see also* Heikkila Decl. ¶¶ 18-19.

17  Likewise, once Engineer Levake was certified as a locomotive engineer in August 2006, he

18  received all of the continuing training for recertification required by both Amtrak's program and

19  policy and 49 C.F.R. § 240.  Andrews  Decl. ¶ 11; *see also* Heikkila Decl. ¶ 26. This included

20  classroom training and testing, on the job training, performance testing, and regular field

21  efficiency test by supervisors to monitor Engineer Levake for ongoing rules compliance while he

22  was operating a train.  Andrews Decl. ¶ 11.

23       Accordingly, FRSA § 20106 applies to preempt Plaintiffs' claims.  Plaintiffs cannot show,

24  as they must, that Amtrak's certification, training, policies, procedures and practices for its

25  engineers violated any of the federal standards contained in 49 C.F.R. § 240, which covers the

26  same safety concerns that Plaintiffs' gross negligence claims seek to address.  *See Burlington N.*

27  *R. Co.*, 880 F.2d at 1106.

28

United States District Court
Northern District of California

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

3.      The Gross Negligence Claims Based on Failure to Discipline Are Also Preempted

Plaintiffs allege that Amtrak violated "regulations, orders, rules and [their] own plans when Amtrak re-certified [Engineer Levake]" after the 2006 incident in which Levake failed to stop at a red signal. SAC at ¶¶ 19, 23-24. Amtrak contends that the gross negligence claims premised on failure to discipline are subject to federal preemption because the FRA sets forth comprehensive regulations regarding discipline, and it is undisputed that Amtrak complied with those rules in disciplining Levake. Mot. at 19. In response, Plaintiffs argue that their claim is not preempted because mere compliance with the minimum regulations regarding discipline is insufficient to insulate Amtrak from liability for gross negligence. Opp'n at 12-13. Plaintiffs also contend that there are disputed factual issues as to whether Amtrak's discipline of Levake took into account whether he was qualified to be an engineer. *Id.* at 10.

49 C.F.R. §§ 240.117 sets forth the requirements for discipline of engineers after a violation of railroad rules and practices. [7] Specifically, § 240.117(c)(1) states: "A certified engineer who has demonstrated a failure to comply, as described in paragraph (e) of this section, with railroad rules and practices for the safe operation of trains shall have his or her certification revoked." Further, § 240.117(g) sets forth the duration of certification revocation called "periods of ineligibility" and provides that an engineer shall have his certification revoked for a period of one month in instances of a single incident involving violation of one or more of the operating rules or practices.

Among the events that require revocation pursuant to 49 CFR § 240.117 is a violation of GCOR Rule 9.5, which provides: "When movement is being made beyond a block signal requiring a train to be prepared to stop at the next signal, the stop must be made before any § of a train passes the block signal requiring the train to stop." Heikkila Decl. ¶ 21. GCOR Rule 9.5 is addressed in 49 C.F.R. § 240.117(e)(l) as follows: "Failure to control a locomotive or train in accordance with a signal indication, excluding a hand or radio signal indication  or a switch, that requires a complete stop before passing it." Also  included as an event requiring revocation of an

---

[7] 49 C.F.R. § 240.117 also requires that each railroad's program (here, Amtrak's GCOR) "shall include criteria and procedures for implementing this section."

1  engineer's certificate is a violation of GCOR Rule 10.1, which provides: "A train must not enter or

2  occupy any track where CTC is in effect unless a controlled signal displays a proceed indication or

3  the control operator authorizes: Movement past a Stop indication under rule 9.12.1..."  Heikkila

4  Decl. ¶ 22.  GCOR Rule 10.1 is also addressed in 49 C.F.R. § 240.117(e)(4) of the federal

5  regulations as follows: "Occupying main track or a segment of main track without proper

6  authority or permission."

7          In considering events requiring revocation, 49 C.F.R. § 240.117(e)(1) provides that "If in

8  any single incident the person's conduct contravened more than one operating rule or practice, that

9  event shall be treated as a single violation for purposes of this section."  49 CFR § 240.117(g) sets

10  forth the duration that the railroad is required to revoke an engineer's certificate in the event of a

11  rule violation, called "periods of ineligibility."  In the case of a single incident involving violation

12  of one or more of the operating rules or practices described above, "the [engineer] shall have his or

13  her certificate revoked for a period of one month."  49 C.F.R. § 240.117(g)(3)(i).

14          Here, the discipline imposed on Engineer Levake after the 2006 failure to stop incident

15  complied with the federal standard governing rules violations by engineers.  Engineer Levake was

16  suspended for 30 days, had his engineer's certificate revoked for 30 days, and was assigned a

17  minimum of five days remedial training in accordance with 49 C.F.R. § 240.117(g)(3)(i).  Def.

18  Stmt. No. 13.  Plaintiffs argue that Amtrak should not have recertified Levake because the

19  accident demonstrated his lack of knowledge about safely operating a locomotive.  Opp'n at 12.

20  But this argument fails to establish a violation of any applicable federal standard of care.  It is

21  undisputed that the discipline imposed by Amtrak complied with the regulations promulgated

22  under 49 C.F.R. § 240 with respect to certification of an engineer after a rules violation.[8]  The

23  federal regulations prescribe what actions railroads must take in the event of a "single incident

24  involving violation of one or more of the operating rules or practices."  Here, Engineer Levake's

25

United States District Court
Northern District of California

26  _____

27  [8] Plaintiffs' expert also fails to take into account relevant facts regarding Levake's performance or
documented qualifications during the five-year period after the accident.  For instance, after
Levake was recertified following the one-month ineligibility period in 2006, he continued to
operate trains safely for five years.  During this period, he was required to undergo recertification
at least once pursuant to applicable federal regulations.

28

certificate was revoked for a period of one month, in accordance with 49 C.F.R. § 240.117.  These regulations are aimed at the same safety concerns that Plaintiffs' claims seek to address, and Plaintiffs cannot demonstrate that Amtrak violated the federal standards set forth in these regulations.  Thus Plaintiffs' gross negligence claim premised on allegations that Amtrak negligently disciplined or re-certified Engineer Levake is preempted by federal law.

Plaintiffs maintain that compliance with the minimum requirements of 49 C.F.R. § 240 cannot be sufficient to bar their gross negligence claims regarding training and certification because "[t]he Amtrak Act, which expressly permits punitive damages, is the very same act that authorizes the regulations Amtrak contends it complied with."  Opp'n at 13.  Plaintiffs' argument is based on a misunderstanding as to how the Amtrak Act and FRSA work together.  The Amtrak Reform Act, passed by Congress in 1997, sets forth a limitation on a plaintiff passenger's ability to recover punitive damages from Amtrak in personal injury or wrongful death claims.  49 U.S.C. § 28103.  This statute is separate from the FRA safety regulations that are at issue here.  The applicable FRA safety regulations are issued pursuant to § 20103(a) of FRSA, which grants the FRA broad power to prescribe regulations and issue orders for every area of railroad safety.  *See Shanklin*, 529 U.S. at 347.  Pursuant to FRSA, the FRA has promulgated comprehensive regulations covering the qualification and certification of individuals who operate locomotives, codified as 49 C.F.R §§ 240.101-411.  The Amtrak Reform Act, on the other hand, simply placed additional limits on a passenger's claims against Amtrak when the passenger also seeks to recover punitive damages.

**D.      Whether Violation of the General Code of Operating Rules Supports Plaintiffs' Gross Negligence Claim**

Amtrak further argues that Plaintiffs cannot base their gross negligence claim on the alleged violation of Amtrak's own General Code of Operating Rules ("GCOR") Nos. 1.1, 1.1.1, and 1.6, which contain general responsibilities regarding safety.  Mot. at 22.  These rules provide:

> 1.0     General Responsibilities
> 1.1     Safety
>         Safety is the most important element in performing duties.
>         Obeying the rules is essential to job safety and continued
>         employment.

1

     1.1.1  Maintaining a Safe Course
         In case of doubt or uncertainty, take the safe course.

2

     1.6   Conduct
         Employees must not be:

3

         1.   Careless of the safety of themselves or others.
         2.   Negligent.

4

Fulk Decl. ¶ 22.

5

   Amtrak argues that these general operating rules merely purport to prohibit negligent

6

conduct by employees under what amount to state common law duty of care standards; they do

7

not, in any way, purport to address flagrant or despicable misconduct by the railroad that might

8

warrant punitive damages. Mot. at 23.  Amtrak further argues that these regulations are preempted

9

by application of the specific regulations covered by 49 C.F.R. § 240, which comprehensively

10

cover the subject of Amtrak's training, supervision, certification, and discipline of engineers.  *Id*.

11

(citing *Union Pacific R.R. Co*., 346 F.3d at 868.

12

   Plaintiffs may only avoid preemption "to the extent their gross negligence claim is based

13

on an alleged violation of a federal standard of care set forth in an applicable FRA regulation or of

14

a railroad's own rule or standard, if it is one created pursuant to an FRA regulation."  *Driesen v.*

15

*Iowa, Chicago & E. R.R. Corp*. 777 F. Supp. 2d 1143, 1158 (N.D. Iowa, 2011) (citing 49 U.S.C. §

16

20106(b)(1)(B)).  It is insufficient to allege a violation of Amtrak's own rules without citing to any

17

applicable federal regulation mandating these rules.  *Id*. (citing *Murrell*, 544 F. Supp. 2d at 1149-

18

50 (D. Or. 2008)).  Here, the undisputed facts demonstrate that Engineer Levake's training,

19

supervision, certification, and discipline was in compliance with the applicable federal regulations.

20

Plaintiffs have not cited any federal regulation mandating the creation of general internal rules,

21

and thus these claims are not based on the violation of any applicable federal standard of care.

22

Accordingly, Plaintiffs cannot use the GCOR general rules to avoid preemption.

23

**E.   Violation of 49 C.F.R. § 218.1 *et seq*.**

24

   Finally, Plaintiffs allege that Amtrak was grossly negligent for violating 49 C.F.R. § 218.1

25

*et seq*., which requires that "Blue Signals" be displayed when work[ers] are on, under or between

26

equipment and remotely controlled switches must be aligned against the movement to the track on

27

which a Blue Signal is displayed.  SAC ¶ 21.  Amtrak argues that Plaintiffs failed to establish that

28

Amtrak violated this regulation because they failed to submit any supporting evidence that

United States District Court
Northern District of California

18

workers were on, under, or between rolling equipment, thereby requiring blue signals to be displayed.  Mot. at 25.  Plaintiffs did not address this argument in their Opposition.

Amtrak has presented uncontroverted evidence in the form of a statement by Amtrak Assistant Superintendent of Road Operations,Tommy Andrews, the supervisor who served as charging officer at the formal hearing on this incident, that there were no workers present at the time of the collision such that a blue signal would have been required.[9]  Andrews Decl. ¶¶ 15-16. Accordingly, the Court finds there was no requirement at the time of the incident that a blue signal or blue flag be displayed and the federal requirements regarding the alignment of switches and notice in the event of a blue signal were inapplicable.

## CONCLUSION

Based on the analysis above, the Court hereby GRANTS Defendant Amtrak's Motion for Partial Summary Judgment as to the Second Cause of Action for Gross Negligence and prayer for Punitive Damages.

**IT IS SO ORDERED.**

Dated: August 6, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[9] See discussion above.